1 DOUGLAS GILLIES, ESQ. (53602)
2 douglasgillies@gmail.com
3756 Torino Drive
3 Santa Barbara, CA 93105
4 (805) 682-7033
5
Attorney for Plaintiff
6 KATHERINE MILLER
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10
11 KATHERINE MILLER,           ) Case No. CV10-09604 JFW (AGRx)
                               )
12           Plaintiff,        )
                               ) **PLAINTIFF'S MEMORANDUM**
13      v.                     ) **OF POINTS AND AUTHORITIES**
14 BANK OF AMERICA N.A.,       ) **IN SUPPORT OF EX PARTE**
   JP MORGAN CHASE BANK N.A.,  ) **APPLICATION FOR**
15 and DOES 1-50, inclusive,   ) **TEMPORARY RESTRAINING**
                               ) **ORDER TO PREVENT**
16           Defendants.       ) **EVICTION**
                               )
17
18
19 _____
20 Plaintiff applies for a temporary restraining order restraining Defendant BANK OF
21 AMERICA N.A., a North Carolina corporation, ("BofA") from evicting Plaintiff from
22 her home. Defendant BofA obtained a judgment in an unlawful detainer action, entered
23 on November 24, 2010, and immediate injunctive relief is requested.
24
25   I. INTRODUCTION
26      Plaintiff KATHERINE MILLER is the owner and resident of a single-family
27 residence in Agoura Hills CA 91301 ("Property"). Plaintiff bought the Property in
28 1998 and built a house where she has resided ever since.

Plaintiff financed the Property and borrowed money from Washington Mutual Bank, FA ("WaMu") in December 2006. She signed a promissory note secured by a Deed of Trust naming California Reconveyance Co. as trustee. A Notice of Trustee's Sale was recorded by California Reconveyance Co. ("CRC") in Los Angeles County in August, 2009, and the property was sold on December 16, 2009. The Notice of Trustee's Sale named Washington Mutual Bank as Beneficiary.

Plaintiff examined the Los Angeles County Records and found no record indicating that a beneficial interest in the Promissory Note had been assigned or transferred after she borrowed the money from WaMu.

Plaintiff was in the process of completing paperwork for a loan modification from Chase while Chase was proceeding with foreclosure. She did not have notice of the foreclosure and was shocked to learn from a realtor that her house was sold in December 2009.

Plaintiff requests a TRO and Preliminary Injunction to preserve the status quo until it can be determined whether any of the defendants have a legal claim to the Property and can demonstrate that they have standing and are a real party in interest.

II. ARGUMENT

The sole purpose of a preliminary injunction is to "preserve the status quo until a determination of the action on the merits. *Sierra Forest Legacy v Rey*, 577 F.3d 1015, 2009 WL 2462216 (9th Cir 2009). "In brief, the bases for injunctive relief are irreparable injury and inadequacy of legal remedies. In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co v Village of Gambell*, 480 U.S. 531, 542 (1987).

The Supreme Court clarified the proper standard for granting or denying a preliminary injunction by stating that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in

his favor, and that an injunction is in the public interest." *Winter v Natural Resources Defense Council*, 555 U.S. ___, 129 S. Ct. 365, 374 (2008).

Granting a preliminary injunction is appropriate where "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiffs'] favor." *The Lands Council v McNair*, 537 F.3d 981, 987 (2008). This "second prong is relevant where irreparable injury is likely and imminent-for example, in the case of imminent foreclosure or deportation-and the plaintiff has demonstrated a serious merits issue but may be unable to determine a likelihood of success on the merits." *Save Strawberry Canyon v Department of Energy*, 613 F. Supp. 2d 1177, 1180 n2 (N.D. Cal. 2009).

Plaintiff will suffer irreparable injury if defendants are permitted to evict her from the Property before the conclusion of this action. Property is considered unique, and therefore Plaintiff's remedy at law, damages, would be inadequate. *Sundance Land Corp v Community First Federal Sav and Loan Assn*, 840 F.2d 653, 662 (9th Cir 1988). If defendants evict Plaintiff, Plaintiff's injury will be irreparable because she might be unable to reacquire it. See *Taylor v Westly*, 488 F.3d 1197, 1202 (9th Cir 2007). This fact weighs heavily in favor of Plaintiff. Additionally, Defendants will not suffer a high degree of harm if a TRO is ordered. While Defendants will not be able to rent or sell the property immediately and may expend costs in further litigating this action, when balanced against Plaintiff's potential loss, Defendants' harm is outweighed.

Plaintiff is likely to succeed on the merits. Plaintiff contends that the promissory note and deed of trust naming Washington Mutual as beneficiary are void on the grounds that WaMu expected and intended for Plaintiff to default and expected to be unjustly enriched by the foreclosure of Plaintiff's home due to increased servicing fees, credit default insurance, and full recovery of the principal of the loan due to sale of the loan to investors soon after Plaintiff signed the Promissory Note.

If no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred. If no contract formation has occurred, there is no settlement agreement to enforce. *Weddington Productions, Inc. v. Flick*, 60 Cal.App.4th 793, 797, 71 Cal.Rptr.2d 265, 268 (1998). Weddington continues, "The parties neither reached, nor objectively manifested, a meeting of the minds on the material terms of a settlement" (p 802). "...the record summarized and highlighted above graphically shows that there was never any meeting of the minds, either subjectively or objectively, as to exactly what these words meant" (p. 808).

Law Professor Kurt Eggert, in a May 2009 article published in the Connecticut Law Review, wrote, "Securitization took exotic subprime loans that are too unstable and complex for many borrowers to understand or use safely, and packaged these loans into securities that are, by their structure, excessively unstable and complex for most investors, multiplying the risk at both ends.

"Investors, like the borrowers, found that the disclosures given to them were inadequate to disclose those risks." (p. 51).

Real property ownership in the U.S. underwent the equivalent of a meltdown in the past decade. It started with repeal of the Glass-Steagall Act, followed by securitization of mortgages, abolition of traditional underwriting practices, and introduction of Credit Default Swaps. Main Street banks bet against their borrowers and Wall Street banks bet against their investors. Loan brokers inserted fraudulent figures in loan applications, encouraged by a growing appetite for toxic assets throughout the financial system.

Borrowers thought they were going to pay back the loans and own their houses. Banks expected borrowers to default, to profit from the default, and then to sell the house. There was no contract because there was no shared expectation in this case, where the lender knew or should have known that the borrower could not pay back the loan.

If Defendants are allowed to evict, Plaintiff will lose the family home. A harsher

outcome could scarcely be imagined. In contrast, Defendants suffer nothing by preserving the status quo and allowing Plaintiff to remain in the home until this matter is determined on the merits. The home's value will be preserved by allowing Plaintiff to remain living there. In contrast, if the Property is foreclosed upon and left vacant, it will likely fall into disrepair and decline in value.

No bond should be required. District courts have broad discretion in determining the amount of a bond. See *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir.2003). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct. *Jorgensen, v. Cassidy*, 320 R.3d 906, 919 (9th Cir.2003).

There is no realistic harm to defendants from a restraint of the foreclosure proceedings and trustee's sale. If defendants prevail, the loan is adequately secured by the property in question and so additional security is neither appropriate nor warranted. *Phleger v. Countrywide Home Loans, Inc.*, 2007 WL 4105672 at 6 (N.D. Cal. 2007)

Plaintiff prays this Court grant the temporary restraining order and set the matter for a hearing for a preliminary injunction pending trial.

Respectfully submitted,

Date: December 22, 2010

Douglas Gillies, attorney for Plaintiff