FILED

1  DOUGLAS GILLIES, ESQ.  (53602)
2  douglasgillies@gmail.com
   3756 Torino Drive
3  Santa Barbara, CA 93105
4  (805) 682-7033

2010 DEC 23  PM 3: 35

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

5  Attorney for Plaintiff
6  KATHERINE MILLER

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  KATHERINE MILLER,            )   No. CV 10-9604-JFW (AGRx)

12                              )   **FIRST AMENDED COMPLAINT**
                Plaintiff,       )
13                              )   1) Wrongful Foreclosure
    v.                           )
14                              )   2) Unfair Competition (B&P§17200)
    BANK OF AMERICA N.A.,        )
15                              )   3) Violation of Cal Civ Code §2923.5
    JP MORGAN CHASE BANK N.A.,   )
16                              )   4) Unjust Enrichment
    and DOES 1–50, inclusive,    )
17                              )   5) No Contract
                Defendants.      )
18                              )   6) Fraud and Concealment
                                 )
19                              )   7) Quiet Title
                                 )
20                              )   8) Declaratory and Injunctive Relief
                                 )
21                              )   9) Slander of Title
                                 )
22                              )   10) Intentional Infliction of Emotional
                                 )
23                              )   Distress
                                 )
24                              )
                                 )
25                              )   Jury Trial Requested

26

27  ///

28

First Amended Complaint        - 1 -

1

## INDEX

2  **INTRODUCTION**                                                                                    **3**

3  **PARTIES AND JURISDICTION**                                                                         **3**

4  **JURY TRIAL DEMAND**                                                                                **4**

5  **BACKGROUND FACTS**                                                                                 **5**

6  **FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE**                                                     **6**

7  **SECOND CAUSE OF ACTION –VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL**

8  **BUS & PROF CODE §17200)**                                                                          **8**

9  **THIRD CAUSE OF ACTION – VIOLATION OF CAL CIV CODE §2923.5**                                        **9**

10  **FOURTH CAUSE OF ACTION - UNJUST ENRICHMENT**                                                      **12**

11  **FIFTH CAUSE OF ACTION - NO CONTRACT**                                                             **12**

12  **SIXTH CAUSE OF ACTION – FRAUD AND CONCEALMENT**                                                   **16**

13  **SEVENTH CAUSE OF ACTION - QUIET TITLE**                                                           **18**

14  **EIGHTH CAUSE OF ACTION - INJUNCTIVE RELIEF**                                                      **19**

15  **NINTH CAUSE OF ACTION – SLANDER OF TITLE**                                                        **20**

16  **TENTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**                            **21**

17  **PRAYER**                                                                                          **21**

18  **PLAINTIFF'S EXHIBITS**                                                                            **24**

19

20

21

22

23

24

25

26

27

28

First Amended Complaint                - 2 -

**INTRODUCTION**

JP MORGAN CHASE BANK NATIONAL ASSOCIATION, transferred title to Plaintiff's residence to Defendant BANK OF AMERICA NATIONAL ASSOCIATION, at an illegal Trustee's Sale on December 16, 2009. No money changed hands. BANK OF AMERICA obtained a judgment in Superior Court on November 24, 2010 to evict Plaintiff from a house she built with her own hands. She comes to federal court for relief from an illegal sale orchestrated by two out-of-state nationally chartered banks who refuse to produce written evidence showing that they are a mortgagee, beneficiary, or authorized agent.

**PARTIES AND JURISDICTION**

1.  Plaintiff KATHERINE MILLER is California resident and the lawful owner of her primary residence located in Agoura Hills, California 91301, APN 4462-007-033. She acquired the Property by Grant Deed in 1998 ("the Property"). The legal description is:

> PARCEL 4 OF PARCEL MAP NO. 5430, IN THE COUNTY OF LOS
> ANGELES, STATE OF CALIFORNIA, AS PER MAP FILED MARCH
> 25, 1977 IN BOOK 77 PAGE 77 OF PARCEL MAPS, IN THE OFFICE
> OF THE COUNTY RECORDER OF SAID COUNTY.

2.  Defendant BANK OF AMERICA NATIONAL ASSOCIATION ("BofA") is a North Carolina corporation with its main office located in Charlotte, NC. It describes itself in the caption of an unlawful detainer action filed against Plaintiff in Superior Court as BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NA, AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA2 TRUST. BofA purports to be both the trustee of the investment trust that is the beneficiary and holder of the Note and a bona fide purchaser of the Property at a Trustee's Sale conducted at the Los Angeles County Courthouse on December 16, 2009.

First Amended Complaint                - 3 -

1       3.  Defendant JP MORGAN CHASE BANK NATIONAL ASSOCIATION

2   ("Chase"), a New York corporation with its principal offices in New York City,

3   NY, asserts that it is an acquirer of certain assets and liabilities of Washington

4   Mutual ("WaMu") from the Federal Deposit Insurance Corporation ("FDIC")

5   acting as receiver, and also claims that it was a servicer for investment trusts of the

6   loan which is the subject of this complaint.

7       4. CALIFORNIA RECONVEYANCE COMPANY ("CRC") is a wholly

8   owned subsidiary of Chase that is named as Trustee on a Deed of Trust ("DOT")

9   describing the Property recorded in Los Angeles County on December 14, 2006

10   (Exhibit 2).

11       5.  Defendants Does 1–50, inclusive, are sued under fictitious names. When

12   their true names and capacities are known, Plaintiff will amend this complaint and

13   insert their names and capacities. Plaintiff is informed and believes and thereon

14   alleges that each of these fictitiously named defendants claims some right, title,

15   estate, lien, or interest in the residence adverse to Plaintiff's title and their claims

16   constitute a cloud on Plaintiff's title to the property, or participated in unlawful or

17   fraudulent acts that resulted in injury to Plaintiff's person or property.

18       6.  There is diversity of citizenship between Plaintiff and Defendants Chase

19   and BofA, and the matter in controversy exceeds, exclusive of interest and costs,

20   the sum of $75,000. This court has jurisdiction of the action pursuant to 28 U.S.C.

21   1332(a). Plaintiff brings this action against Bank of America National Association,

22   JPMorgan Chase Bank National Association, and Does 1–50 for fraudulently

23   transferring title to Plaintiff's Property to BofA at an illegal trustee's sale and

24   attempting to deprive Plaintiff of her residence without lawful claim to the

25   Property.

26                   **JURY TRIAL DEMAND**

27       7.  Plaintiff requests a jury trial on all issues.

28

First Amended Complaint          - 4 -

**BACKGROUND FACTS**

8.  Plaintiff bought the Property in 1998 and built a residence which remains her home. She refinanced the Property in December 2006. Plaintiff's loan application was submitted to WaMu by Chris Hendricks, a mortgage broker.

9.  Plaintiff signed mortgage documents on December 7, 2006 in Simi Valley at Financial Title Co.  After she signed, the title company told Plaintiff that WaMu or the title company would send the final documents to her. Plaintiff never received these documents from WaMu or Financial Title Co., nor did she receive disclosures required by the Truth in Lending Act and Notice of Right to Cancel.

10. This was a "no-docs" Adjustable Rate Mortgage loan. Plaintiff did not receive a copy of her completed loan application after the blanks were filled in by bank employees. She made monthly payments to WaMu of $2,769 starting in January 2007 and continued until the payment adjusted to $6,419 in July 2009.

11.  Plaintiff is named Trustor on a DOT acknowledged by Notary Public Amy Jewett on December 8, 2006, which was recorded in Los Angeles County on December 14, 2006. Washington Mutual Bank is identified on the DOT as "the lender" and "the beneficiary under this security agreement." Plaintiff has not received notice that WaMu's beneficial interest has been transferred to Chase or anyone else.

12.  WaMu immediately securitized Plaintiff's single-family residential mortgage loan through Washington Mutual Mortgage Securities Corp., evidenced by Supplement to Prospectus, WaMu Mortgage Pass-Through Certificates, Series 2007-OA2 Trust. Plaintiff is informed and believes that the trust has been terminated and the beneficiary or beneficiaries have been paid in full.

13.  On August 24, 2009, CRC, a wholly owned subsidiary of Chase, recorded a Notice of Default ("NOD") describing the Property with instructions that Plaintiff contact JPMorgan Chase Bank National Association in Jacksonville, Florida to stop the foreclosure (Exhibit 1)

First Amended Complaint                    - 5 -

14.  The final sentence of the NOD states, "The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower, as required by California Civil Code 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of §2923.5." It is signed by Yana Grabovsky, Assistant Secretary for CRC. The statement is not signed under penalty of perjury. Therefore, it has no evidentiary value to show whether defendants made the contacts required by §2923.5. Chase's role is not described in the NOD.

15.  On November 30, 2009, CRC recorded a Notice of Trustee's Sale ("NOTS") stating that the Property would be sold at public auction on December 16, 2009 (Exhibit 2). The NOTS includes a statement claiming compliance with Cal. Civil Code 2923.5 (c) that appears to bear a signature of Deborah Brignac, Vice President. Plaintiff is informed and believes that the signature of Deborah Brignac is a forgery.

### FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE

16.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 15.

17.  Immediately after WaMu originated the loan, it transferred all beneficial interest in the loan through Washington Mutual Mortgage Securities Corp., evidenced by a Prospectus Supplement to Prospectus, WaMu Mortgage Pass-Through Certificates, Series 2007-OA2 Trust.  All subsequent holders of the Note took possession subject to Plaintiff's claims and defenses against WaMu. WaMu retained no beneficial interest in the loan after December 31, 2006. If it had any function when certain assets of WaMu were transferred to Chase in a Purchase & Assumption Agreement dated September 25, 2008, WaMu was merely a servicer.

18.  Neither WaMu, CRC, Chase, nor anyone else has recorded a transfer of a beneficial interest in the Note or the Property to Chase. If Chase was a

First Amended Complaint               - 6 -

1  beneficiary, CRC breached its fiduciary duty to Plaintiff under the DOT executed
2  by Plaintiff by not recording a transfer of the beneficial interest and/or servicing
3  duty from WaMu to Chase, by not indicating on the Notice of Default that Chase is
4  the beneficiary, and by not recording a substitution of trustee indicating that
5  commencing on September 25, 2008, it was a trustee for Chase rather than WaMu.
6  Paragraph 24 of the DOT states:

7       24. Substitute Trustee. Lender, at its option, may from time to time
8       appoint a successor trustee to any Trustee appointed hereunder by an
9       instrument executed and acknowledged by Lender and recorded in the
10      office of the Recorder of the county in which the property is located. The
11      instrument shall contain the name of the original Lender, Trustee and
12      Borrower, the book and page where this Security Instrument is recorded
13      and the name and address of the successor trustee. Without reconveyance
14      of the property, the successor trustee shall succeed to all the title, powers
15      and duties conferred upon the Trustee herein and by Applicable Law.
16      This procedure for substitution of trustee shall govern to the exclusion of
17      all other provisions for substitution.
18

19      19.  Chase did not have standing to enforce the Note because Chase was not
20  the owner of the Note, Chase was not a holder of the Note, and Chase was not a
21  beneficiary under the Note. Chase has not claimed to be a holder of the note or a
22  beneficiary. Chase merely describes itself as a loan servicer in the Notice of
23  Trustee's Sale. If Chase can prove that it was a servicer, as it asserts without
24  disclosing any document as proof, Chase could not foreclose on Plaintiff's property
25  without joining the owner of the note because Chase was not a real party in interest
26  under Fed. Rule Civil Proc. 17.
27      20.  Plaintiff is informed and believes that Chase did not have standing to
28  sell Plaintiff's property because Chase was not the holder of the Note. Chase did

First Amended Complaint                - 7 -

1   not pay any consideration to Plaintiff evidenced by a promissory note and cannot

2   produce a promissory note endorsed to Chase or anyone else because WaMu sold

3   the loan. Chase did not own the loan and could not identify the owner of the loan.

4   Chase did not purchase the loan when it took over WaMu in September 2008.

5

6   **SECOND CAUSE OF ACTION –VIOLATION OF CALIFORNIA'S**

7   **UNFAIR COMPETITION LAW (CAL BUS & PROF CODE §17200)**

8   21.  Plaintiff re-alleges and incorporates by reference the allegations

9   contained in paragraphs 1 through 20. Plaintiff made timely monthly payments to

10  WaMu of $2,769 starting in January 2007 and continuing until her payment

11  adjusted to $6,419 in July 2009. Plaintiff inquired about a loan modification and

12  was informed that she could not qualify for a loan modification until she was in

13  default for three months, and that she should purposefully stop making payments

14  on the loan so that she would enter default and qualify for restructuring. Three

15  months later, Plaintiff visited Chase's Burbank office and submitted an application

16  and supporting documents for a loan modification. Chase requested more

17  documents, which Plaintiff provided within 30 days. Chase did not contact her

18  again or request more documents.

19  22.  While she was awaiting a decision from Chase about her loan

20  modification, a realtor knocked on Plaintiff's door in December 2009 and told her

21  that the house had been sold to Bank of America. She thought she was going to die

22  from the shock. Plaintiff had no idea Chase could foreclose while she was

23  negotiating a loan modification with them. No contacts had been made by

24  Defendants as required by Cal Civil Code §2923.5. No Notice of Trustee's Sale

25  had been posted on the Property.

26  23.  Pursuant to Cal. Civil Code §2923.5, Defendants are prohibited from

27  recording a Notice of Default against a primary residential property in California

28  without first making contact with the owner and then interacting with that person

1   in the manner set forth in detail under §2923.5. An exception to this rule exists in

2   the event Defendants are unable with due diligence to contact the property owner.

3       24.  California's unfair competition statute prohibits "any unlawful, unfair or

4   fraudulent business act or practice." Cal. Bus. & Prof. Code §17200. The term

5   "fraudulent" as used in §17200 only requires a showing that members of the public

6   are likely to be deceived. It has become Defendants' customary business practice to

7   deceive homeowners by pretending to negotiate loan modifications while they start

8   foreclosure proceedings.

9       25.  Plaintiff's default on the loan enabled Defendants to begin nonjudicial

10   foreclosure proceedings, culminating in the sale of the Property in December 2009.

11   California law only permits foreclosure proceedings after the debtor enters default.

12   Defendants' conduct was immoral, unethical, oppressive, unscrupulous, and

13   substantially injurious to Plaintiff and was "unfair." Defendants' strategy shocked

14   Plaintiff and caused her to suffer severe emotional distress.

15

16   **THIRD CAUSE OF ACTION – VIOLATION OF CAL CIV CODE §2923.5**

17       26.  Plaintiff re-alleges and incorporates by reference the allegations

18   contained in paragraphs 1 through 25.

19       27.  Plaintiff missed her first payment in July 2009. Defendants commenced

20   foreclosure of the Property by recording a Notice of Default (NOD) in the Los

21   Angeles County Recorder's Office on August 24, 2009. Civil Code §2923.5(a)(1)

22   states that a mortgagee, trustee, beneficiary, or authorized agent may not file a

23   notice of default pursuant to Civil Code §2924 until 30 days after contact is made

24   as required by §2923.5(a)(2) or 30 days after satisfying the due diligence

25   requirements described in subdivision (g). Paragraph (a)(2) states that a mortgagee,

26   beneficiary, or authorized agent shall contact the borrower in person or by

27   telephone in order to assess the borrower's financial situation and explore options

28   for the borrower to avoid foreclosure. During the initial contact, the mortgagee,

beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. No contact was made by Defendants before the NOD was filed, nor was any effort made to contact Plaintiff. Defendants did not contact Plaintiff in person or by telephone in order to assess her financial situation and explore options to avoid foreclosure. Defendants did not advise the Plaintiff that she has the right to request a subsequent meeting. Defendants did not provide the toll-free telephone number to find a HUD-certified counseling agency.

27. At the bottom of the NOD, a statement was signed by Yana Grabovsky, Assistant Secretary for CRC, on August 21, 2009, asserting that the beneficiary or its designated agent "contacted the borrower, tried with due diligence to contact the borrower, or the borrower has surrendered the property." Plaintiff is informed and believes that declarant Yana Grabovsky did not have personal knowledge of the matters described in his statement, which was simply form language copied from the statute. An employee of CRC working in Chatsworth CA, he did not have personal knowledge of attempts by Chase in Florida to contact Plaintiff, and he could not identify the beneficiary of Plaintiff's promissory note.

28.  On October 1, 2010, California Attorney General Jerry Brown sent a letter to Chase (Exhibit 3) and ordered Chase to halt all foreclosures in California. A copy of the letter is posted on the Attorney General's website at http: //ag.ca.gov/newsalerts/release.php?id=1996. Mr. Brown wrote:

> The Office of the Attorney General writes to demand that JP Morgan Chase demonstrate immediately that it conducts foreclosures in compliance with California Civil Code, section 2923.5 or, if it cannot, halt all foreclosures in California until it can.

First Amended Complaint          - 10 -

1     Section 2923.5, subdivision (b) provides that a lender may not record a

2     notice of default in California for a California mortgage originated between

3     January 1, 2003 and December 31, 2007, unless it can declare that it "has

4     contacted the borrower, has tried with due diligence to contact the

5     borrower as required by this section, or that no contact was required

6     pursuant to subdivision (h)."

7     JP Morgan Chase has now admitted that employees assigned to handling

8     foreclosures signed affidavits without first personally reviewing the

9     contents of borrowers' loan files. Thus, borrowers suffered the foreclosure

10    of their homes based on affidavits which JP Morgan Chase had not

11    confirmed to be accurate. This admission strongly suggests that any

12    purported verification by JP Morgan Chase that it complied with section

13    2923.5 before commencing a foreclosure in California is similarly suspect.

14    ///

15    29.  On October 8, 2010, the Attorney General called on all lenders in

16    California to halt foreclosing on California homes until they can demonstrate

17    compliance with state law. "JP Morgan Chase, the nation's third largest loan

18    servicer, Ally Financial and One West have admitted that employees approved and

19    signed foreclosure documents without first fully reviewing the borrowers' loan

20    files. As a result, those borrowers lost their homes based on affidavits the bank

21    never confirmed were accurate." http:

22    //ag.ca.gov/newsalerts/release.php?id=2000&

23    30.  The statement of Yana Grabovsky on the NOD (Exhibit 1) was not

24    based on personal knowledge and does not satisfy the requirements of Civil Code

25    §2923.5. The statement of Yana Grabovsky was not signed under penalty of

26    perjury, so the assertions have no evidentiary value to prove that the requirements

27    of §2923.5 were met. The NOTS (Exhibit 2) includes a statement claiming

28    compliance with Cal. Civil Code 2923.5 (c) that appears to bear a signature of

First Amended Complaint          - 11 -

Deborah Brignac, Vice President. Plaintiff is informed and believes that the signature of Deborah Brignac is a forgery. The foreclosure of Plaintiff's property was illegal under California law and must be enjoined before Plaintiff is unlawfully evicted.

## FOURTH CAUSE OF ACTION - UNJUST ENRICHMENT

31.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 30.

32.  WaMu securitized Plaintiff's single-family residential mortgage loan through Washington Mutual Mortgage Securities Corp., evidenced by Supplement to Prospectus, WaMu Mortgage Pass-Through Certificates, Series 2007-OA2 Trust.

33.  Plaintiff is informed and believes that the trust has been terminated and the beneficiary has been paid in full. Chase acquired no beneficial interest in Plaintiff's mortgage from WaMu, since WaMu did not hold a beneficial interest, and therefore payments made to Chase by Plaintiff in 2008-2009 constitute unjust enrichment.

34.  The foreclosure sale of Plaintiff's Property to BofA by Chase was illegal and constitutes unjust enrichment in that BofA received title to Plaintiff's residence from Chase at no cost, Chase had no beneficial interest in the Property, and CRC charged Plaintiff unauthorized fees in connection with the illegal foreclosure.

35.  The DOT states that all secured sums must be paid. Plaintiff alleges that the obligations under the DOT were fulfilled when WaMu received funds in excess of the balance on the Note as a result of proceeds of sale through securitization of the loan.

## FIFTH CAUSE OF ACTION - NO CONTRACT

36.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 35.

First Amended Complaint          - 12 -

1      37.  Plaintiff is informed and believes that WaMu routinely approved

2  predatory real estate loans to unqualified buyers in 2006 and implemented

3  unlawful lending practices by encouraging brokers and loan officers to falsify

4  borrowers' income and assets to meet underwriting guidelines when borrowers

5  were not qualified. WaMu had exclusive knowledge not accessible to Plaintiff of

6  material facts pertaining to its mortgage lending activities that it did not disclose to

7  Plaintiff at the time it was entering into its contract with Plaintiff. These facts

8  included false appraisals and violation of WaMu's underwriting guidelines with

9  the intent of selling Plaintiff's mortgage above the actual values to investors.

10      38.  Plaintiff presumably signed an Adjustable Rate Note ("Note") secured

11  by the DOT in the amount of $1,000,000.00. The Note, which was never indorsed

12  (UCC 3-204), identified the lender as WASHINGTON MUTUAL BANK, FA.

13  Chase was not a holder of the note. Defendants cannot identify the holder of the

14  note, the mortgagee, or the beneficiary.

15      39.  Plaintiff is informed and believes that WaMu pre-sold Plaintiff's

16  mortgage and immediately after she signed the Note and transferred all of its

17  interest in the Note to an investment bank that bundled Plaintiff's Note with

18  numerous other residential mortgages into residential mortgage-backed securities

19  ("RMBS") which were structured into synthetic collateralized debt obligations

20  ("CDOs") and sold to investors.

21      40.  Plaintiff is informed and believes that the portfolio of RMBS underlying

22  the synthetic CDOs were selected by a hedge fund with economic interests directly

23  adverse to borrowers and investors, and that the hedge fund and the investment

24  bank intended to short the portfolio it helped to select by entering into credit

25  default swaps to buy protection in the almost certain event that the promissory

26  notes would default. WaMu expected that Plaintiff did not have the ability to repay

27  the loan. It was not a matter of being unconcerned with the possible outcome that

28  Plaintiff would default. WaMu knew Plaintiff could not perform. There was no

First Amended Complaint        - 13 -

1    expectation of performance.

2        41.  Washington Mutual Bank, the sponsor of the securitization transaction,

3    was a wholly owned subsidiary of Washington Mutual Inc. Securitization of

4    mortgage loans was an integral part of Washington Mutual Inc.'s management of

5    its capital. It engaged in securitizations of first lien single-family residential

6    mortgage loans through Washington Mutual Mortgage Securities Corporation, as

7    depositor, beginning in 2001. WaMu acted only as a servicer of Plaintiff's loan.

8        42.  WaMu failed to disclose to Plaintiff that its economic interests were

9    adverse to Plaintiff and that WaMu expected to profit when Plaintiff found it

10   impossible to perform and defaulted on her mortgage.

11       43.  A necessary element in the formation of an enforceable contract under

12   the common law is a *meeting of the minds*. Two or more parties must share an

13   expectation that a future event will occur. Plaintiff expected that she would borrow

14   money from WaMu, she would pay it back, and then she would own the Property.

15   WaMu expected that Plaintiff would borrow money, she would not be able to pay

16   it back, and then WaMu or the investors would own the Property. Since there was

17   no shared expectation—no meeting of the minds—no contract was formed

18   between Plaintiff and WaMu.

19       44.  In addition to WaMu's expectation that Plaintiff would lose title to the

20   Property through foreclosure, WaMu anticipated transferring the Note to investors

21   immediately after Plaintiff signed the Note. Plaintiff is informed and believes that

22   WaMu purchased credit default insurance so that WaMu would receive the balance

23   on the Note when Plaintiff defaulted, in addition to any money WaMu received

24   when it securitized the note and increased servicing fees when it foreclosed.

25       45.  Not only did WaMu dispense with conventional underwriting practices

26   in 2006, it also paid premium fees and other incentives to mortgage brokers who

27   signed up the riskiest borrowers. Fueled by spiraling profits to Chase, WaMu, and

28   other bankers, common law principles of contract formation, customary

First Amended Complaint          - 14 -

1   underwriting practices, and statutory procedures for transferring interests in real

2   property, including the recordation of transfers of interests in real property,

3   disintegrated and the system collapsed.

4        46.  WaMu expected that Plaintiff would not perform as one victim in a

5   scheme in which:

6   (1) WaMu's fees as servicer would be greater as the number of loans increased;

7   (2) WaMu's fees as servicer would be greater as the balances of loans increased;

8   (3) WaMu would recover the unpaid balance of Plaintiff's loan through credit

9   default insurance when Plaintiff inevitably defaulted; and

10  (4) All risk of loss in the event of Plaintiff's default would be borne by investors,

11  not WaMu as the servicer.

12       47.  Plaintiff's participation in the mortgage contract was procured by overt

13  and covert misrepresentations and nondisclosures. The parties did not share a

14  single expectation with respect to any of the terms of the mortgage contract and

15  therefore the contract was void *ab initio*. Had Plaintiff known that WaMu intended

16  to sell her mortgage and engage in all the securitizations and collateralizations, she

17  would never have entered into a mortgage contract with WaMu.

18       48. The only tangible evidence Chase offers to support its asserted claim to

19  sell Plaintiff's Property is a Purchase & Assumption Agreement hastily drafted by

20  FDIC and signed on September 25, 2008. That agreement is still being negotiated

21  two years later and is hotly debated. No enforceable contract was formed between

22  Plaintiff and WaMu, so her DOT and Promissory Note were not assets of WaMu

23  that could be acquired or assumed by Chase from the Federal Deposit Insurance

24  Corporation (FDIC) as receiver after WaMu was closed by the Office of Thrift

25  Supervision on September 25, 2008.

26       49.  Chase Bank had no right to receive payments under Plaintiff's mortgage

27  loan and had no right to foreclose on her property. Plaintiff does not seek

28  rescission of the contract with WaMu and therefore she is not required to tender

First Amended Complaint          - 15 -

the loan balance. She alleges that the contract was void *ab initio*. If a real party in interest appeared in this action, Plaintiff would make the necessary payment to that party.

## SIXTH CAUSE OF ACTION – FRAUD AND CONCEALMENT

50.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 49.

51.  WaMu concealed material facts from Plaintiff to induce Plaintiff to consummate the loan, including:

(1) WaMu did not follow conventional, sound underwriting practices;

(2) Plaintiff would not be able to afford the payments required by her loan;

(3) Plaintiff would not be able to refinance her interest-only negative amortization ARM loan; and

(4) Plaintiff's loan would be resold and securitized to third parties, rendering it impossible for the lender to provide Plaintiff with a full reconveyance upon completion of her payments on the Note.

52.  Chase concealed and continues to conceal from Plaintiff the following material facts in its possession that would enable her to ascertain whether her payments to WaMu and Chase went to the owner or beneficiary of the Note:

(1) a copy of the Final Loan Application, including notations by underwriters;

(2) the contract, duly signed by an officer of the corporation, which committed WaMu to lend funds to Plaintiff;

(3) a ledger statement of WaMu showing: (a) the account and the source of the funds loaned to Plaintiff, and (b) entry in WaMu's books of the Note as an asset or cash item;

(4) the identity and contact information of the current owner of the Note and the holder of the Note, and whether that entity or entities filed for bankruptcy;

(5) an authenticated copy of the front and the back sides of the original

First Amended Complaint          - 16 -

1   Promissory Note showing a complete chronological chain of all endorsements
2   and assignments;
3   (6) the names and addresses of each and every individual or entity that has
4   received an assignment of the Note;
5   (7) whether there has been a sale or assignment of the servicing rights to
6   Plaintiff's mortgage account, and if so, the names and addresses of each and
7   every individual or entity that has received such servicing rights;
8   (8) whether this mortgage account has been a part of any mortgage pool since
9   the inception of the loan, and if so, the identify each account mortgage pool that
10  the mortgage has been a part of;
11  (9) whether any assignment of the Note has been recorded in the Los Angeles
12  County Recorder's Office;
13  (10) whether there has been any assignment of this mortgage to MERS
14  (Mortgage Electronic Registration System) or any other mortgage registry
15  service;
16  (11) whether any investors participated in any mortgage-backed security,
17  collateralized debt obligation, or other mortgage security instrument that
18  included Plaintiff's mortgage;
19  (12) copies of sales contracts, servicing agreements, assignments, allonges,
20  transfers, indemnification agreements, recourse agreements and other
21  agreements related to Plaintiff's account;
22  (13) whether the mortgage is a part of a mortgage pool;
23  (14) whether any investor of other interested party approved of the foreclosure
24  of Plaintiff's property; and,
25  (15) the CUSIP number for Plaintiff's loan account.
26       53.  As a direct and proximate result of Chase's concealment, Plaintiff has
27  suffered and continues to suffer damages in an amount to be proven at trial.
28  Plaintiff remains under the constant threat of eviction from the Property, which

First Amended Complaint            - 17 -

1  could happen at any time, and in addition to damages caused by her emotional

2  distress, she suffered irreparable injury not compensable in damages when the

3  Property was sold. Plaintiff's damages arising also include loss of equity in her

4  home, costs and expenses related to protecting herself, reduced credit scores,

5  unavailability of credit, increased costs of credit, reduced availability of goods and

6  services tied to credit ratings, increased costs of those services, as well as fees and

7  costs, including, without limitation, attorneys' fees and costs.

8

9  ### SEVENTH CAUSE OF ACTION - QUIET TITLE

10  54.  Plaintiff re-alleges and incorporates by reference the allegations

11  contained in paragraphs 1 through 53.

12  55.  Plaintiff seeks to quiet title against the claims of Defendants and all

13  persons claiming any legal or equitable right, title, estate, lien, or adverse interest

14  in the Property as of the date the Complaint was filed (Cal Code Civil Procedure

15  §760.020)

16  56.  Plaintiff is the titleholder of the Property according to the terms of a

17  Grant Deed executed and recorded in 1998.

18  57.  WaMu securitized Plaintiff's single-family residential mortgage loan

19  through Washington Mutual Mortgage Securities Corp. Plaintiff is informed and

20  believes that the WaMu Mortgage Pass-Through Certificates, Series 2007-OA2

21  Trust described above is terminated and the lawful beneficiary has been paid in

22  full. CRC owes a duty to reconvey the DOT to Plaintiff.

23  The DOT states in paragraph 23:

24  23. Reconveyance. Upon payment of all sums secured by this Security

25  Instrument, lender shall request Trustee to reconvey the Property and

26  shall surrender this Security Instrument and all notes evidencing debt

27  secured by this Security Instrument to trustee. Trustee shall reconvey the

28  Property without warranty to the person or persons legally entitled to it…

First Amended Complaint          - 18 -

1   The DOT does not state that Plaintiff must make full payment, only that
2   all secured sums must be paid. Plaintiff alleges that the obligations owed to
3   WaMu under the DOT were fulfilled and the loan was fully paid when WaMu
4   received funds in excess of the balance on the Note as proceeds of sale through
5   securitization(s) of the loan and insurance proceeds from Credit Default Swaps.

6   58.  Defendants' claims are adverse to Plaintiff because Plaintiff is informed
7   and believes that none of the defendants is the holder of the Promissory Note, none
8   of them can prove any interest in the Note, and none of them can prove that the
9   Note is secured by the DOT, as well as for the reasons set forth in the preceding
10  causes of action. As such, Defendants have no right, title, estate, lien, or interest in
11  the Property.

12  59.  Plaintiff therefore seeks a judicial declaration that the title to the subject
13  property is vested solely in Plaintiff and that Defendants have no right, title, estate,
14  lien, or interest in the Property and that Defendants and each of them be forever
15  enjoined from asserting any right, title, estate, lien or interest in the Property
16  adverse to Plaintiff.

17
18          **EIGHTH CAUSE OF ACTION - INJUNCTIVE RELIEF**

19  60.  Plaintiff re-alleges and incorporates by reference the allegations
20  contained in paragraphs 1 through 59.

21  61.  An actual controversy has arisen and now exists between Plaintiff and
22  Defendants concerning their respective rights and duties. Plaintiff contends:

23  (a) that Chase was never the holder in due course or beneficiary of a
24  Promissory Note executed by Plaintiff. However, Defendants contend that Chase
25  was the owner and beneficiary of a Promissory Note executed by Plaintiff.

26  (b) that Defendants are not real parties in interest, do not have standing, and
27  were not entitled to accelerate the maturity of any secured obligation and sell the
28  Property because they were not a beneficiary or authorized agent of beneficiaries

under the Promissory Note. However, Defendants assert that they were entitled to sell the Property.

62.  Plaintiff desires a judicial determination of her rights and duties as to the validity of the Promissory Note and DOT, and Defendants' rights to carry out nonjudicial foreclosure on the Property. Unless restrained, Defendant BofA will evict Plaintiff from her residence, to Plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief.

63.  Defendants' wrongful conduct, unless and until restrained by order of this court, will cause great irreparable injury to Plaintiff as the value of the Property declines and Plaintiff faces the prospect of eviction from her residence. Plaintiff designed and built this home herself from the foundation up. She raised her son there.  The property is the headquarters of her company, Hidden Malibu Wine Country Tours, and her source of income. The Property is Plaintiff's business and her life's work. It is unique and cannot be replicated.

64.  If the eviction of Plaintiff is allowed to proceed, the burden on Plaintiff significantly outweighs the benefit to Defendants, and each of them.

65.  By contrast, if Plaintiff's eviction is enjoined, the burden to any or all Defendants is minimal and not at all outweighed by the benefit to Plaintiff.

66.  Plaintiff has no adequate remedy at law for the injuries currently being suffered and that are threatened. It will be impossible for Plaintiff to determine the precise amount of damage that she will suffer if Defendants' conduct is not restrained, the Sheriff carries Plaintiff out to her gate, and Plaintiff must file a multiplicity of suits to obtain compensation for her injuries.

### NINTH CAUSE OF ACTION – SLANDER OF TITLE

67.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 66.

68.  The foreclosing defendants, and each of them, by their acts and

First Amended Complaint           - 20 -

1  omissions, published matters which were untrue and disparaging to Plaintiff's right
2  to title in the subject property.

3      69.  The aforementioned publications by the foreclosing defendants, and
4  each of them, were unjustified and without privilege.

5      70.  It is reasonably foreseeable that the aforementioned publications by the
6  foreclosing defendants, and each of them, casts doubt on Plaintiff's right to title in
7  her property, which has caused and continues to cause damages to Plaintiff.

8      71.  As a result of said publications from Defendants, and each of them,
9  Plaintiff has suffered and continues to suffer loss of money, credit, real property
10  value, and reputation, in an amount to be proven at trial.

11

12  **TENTH CAUSE OF ACTION - INTENTIONAL INFLICTION OF**
13  **EMOTIONAL DISTRESS**

14      72.  Plaintiff re-alleges and incorporates by reference the allegations
15  contained in paragraphs 1 through 71.

16      73.  Plaintiff contends that the acts and omissions of the Defendants, and
17  each of them, constitute extreme and outrageous conduct.

18      74.  Plaintiff further contends that Defendants, and each of them, engaged in
19  such conduct either intentionally or with reckless disregard as to the effect on
20  Plaintiff.

21      75.  As a result of said extreme and outrageous conduct by Defendants, and
22  each of them, Plaintiff has suffered severe emotional distress of $5,000,000.00.

23

24  **PRAYER**
25  WHEREFORE, Plaintiff requests judgment as follows:

26      1.  That this court issue an Order to Show Cause and, after a hearing, issue a
27  Temporary Restraining Order and Preliminary Injunction restraining Defendants,
28  and each of them, during the pendency of this action, from continuing with their

First Amended Complaint      - 21 -

1   efforts to remove Plaintiff from the Property.

2      2. That the attempted foreclosure of the Property be declared illegal and that

3 Defendants be forever enjoined and restrained from selling the Property or causing

4 it to be sold, either under power of sale pursuant to trust deed or by foreclosure

5 action, and from posting, publishing, or recording any notice of default or notice of

6 trustee's sale contrary to state or federal law.

7      3. That the underlying loan transaction be declared void as a result of

8 Defendants' and WaMu's misrepresentations, fraud, concealment, and predatory

9 loan practices.

10     4. That Defendants make restitution to Plaintiff according to proof.

11     5. For a judgment determining that Plaintiff is the owner in fee simple of the

12 Property against the adverse claims of Defendants and that Defendants have no

13 interest in the property adverse to Plaintiff.

14     6. For damages in an amount of $5,000,000.00.

15     6. For costs of suit and reasonable attorney fees.

16     7. For any and all other and further relief that may be just in this matter.

17

18     Respectfully submitted,

19

20     Date: December 22, 2010

21                    Douglas Gillies, Attorney for Plaintiff

22

23

24

25

26

27

28

First Amended Complaint        - 22 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

Katherine Miller declares:

I am the plaintiff in the above-entitled action. I have read the foregoing First Amended Complaint and know its contents. The same is true of my own knowledge, except those matters that are alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Agoura Hills, CA on December 18, 2010.

_____
Katherine Miller

# Plaintiff's Exhibits

| Exhibit | Description | Filed |
|---------|-------------|-------|
| 1 | Notice of Default 8/24/2009 | 12/15/2010 |
| 2 | Notice of Trustee's Sale 11/30/2009 | 12/15/2010 |
| 3 | Letter of Attorney General Brown to Chase 10/1/10 | 12/15/2010 |

# EXHIBIT 1

▲ 

**This page is part of your document - DO NOT DISCARD**



# 20091298248



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/24/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |

▲                                        ▲



**L E A D S H E E T**



200908240160008

**00001093197**



002278029

**SEQ:**
**03**

DAR - Title Company (Hard Copy)



▲ **THIS FORM IS NOT TO BE DUPLICATED**   t79   ▲



Trustee Sale No. 438263CA Loan No. 3011398694 Title Order No. 191179

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On August 21, 2009 before me, CARLOS BERNAL, "Notary Public", personally appeared Deborah Brignac, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Carlos Bernal_ (Seal)

> CARLOS BERNAL
> Commission # 1751658
> Notary Public - California
> Los Angeles County
> My Comm. Expires Jun 18, 2011

FA_MERGE.DOC

2

# EXHIBIT 2



**This page is part of your document - DO NOT DISCARD**



## 20091800579



**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/30/09 AT 08:00AM**

**Pages:**
**0004**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



200911300160009

00001562495



002419139

**SEQ:**
**08**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t97



Recording Requested By

ServiceLink

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

11/30/2009

*20091800579*

**Trustee Sale No.**   **438263CA**
Loan No.                3011398694
Title Order No.       191179

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12/07/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 12/16/2009 at 10:30 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 12/14/2006, Book , Page , Instrument 06 2778756,      of official records in the Office of the Recorder of LOS ANGELES County, California, executed by: KATHERINE MILLER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: AT THE WEST SIDE OF THE LOS ANGELES COUNTY COURTHOUSE, DIRECTLY FACING NORWALK BOULEVARD, 12720 NORWALK BLVD. , NORWALK, CA

Legal Description:  PARCEL 4 OF PARCEL MAP NO. 5430, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP FILED MARCH 25, 1977 IN BOOK 77 PAGE 77 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

Amount of unpaid balance and other charges: $1,100,418.14 (estimated)

Street address and other common designation of the real property:      1850 OLIVERA DR.
AGOURA HILLS, CA 91301
APN Number:   4462-007-033

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

*3*

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 11-25-2009                          **SEE ATTACHED EXHIBIT**

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT
COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

4

Exhibit

## DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2923.54

Pursuant to California Civil Code Section 2923.54, the undersigned loan servicer declares as follows:

1. It has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.54 that is current and valid on the date the notice of sale is filed; and

2. The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or Section 2923.55.

JPMorgan Chase Bank,
National Association

Name:  Ann Thorn
Title:    First Vice President

# EXHIBIT 3

State of California • Department of Justice

# OFFICE OF THE ATTORNEY GENERAL

### Edmund G. Brown Jr.

## News Release
October 01, 2010
FOR IMMEDIATE RELEASE
Contact: (510) 622-4500

# Brown Demands JP Morgan Chase Suspend Foreclosures Unless It Can Demonstrate Compliance with California Law

LOS ANGELES - Attorney General Edmund G. Brown Jr. has demanded that JP Morgan Chase prove immediately that it is complying with state law or, if it cannot, halt foreclosing on California homes.

"I'm taking this action to further protect California homeowners on the brink of foreclosure," Brown said, "JP Morgan Chase, like GMAC/Ally Financial, has admitted that its review of key foreclosure documents was a ruse."

"I'm directing Chase to prove it is following the law before it continues foreclosures in California," Brown added.

California law prohibits lenders from recording notices of default on mortgages made between January 1, 2003 and December 31, 2007, unless, subject to limited exceptions, the lender contacts or tries diligently to contact the borrower to determine eligibility for a loan modification. A notice of default must include a declaration of compliance with California law.

JP Morgan Chase, the nation's third largest loan servicer, has admitted that employees signed affidavits in 56,000 foreclosure cases nationwide without first personally reviewing the contents of the borrowers' loan files. As a result, those borrowers lost their homes based on affidavits the bank never confirmed were accurate.

This practice strongly suggests that any purported verification by JP Morgan Chase that it complied with California law before beginning foreclosures here is also questionable.

JP Morgan has suspended foreclosures in 23 other states that, unlike California, require a court order for foreclosures.

On Sept. 24, Brown sent a similar letter to Ally Financial, Inc., formerly known as GMAC, directing it to prove it is complying with California law or cease foreclosures in California until it can. The Attorney General's office is in contact with Ally.

Brown's letter to JP Morgan Chase is attached.

# # #